UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-10396-GAO

ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor,[1]
Plaintiff,

v.

LOCAL UNION 26, UNITE HERE,
Defendant.

OPINION AND ORDER
May 3, 2017

O'TOOLE, D.J.

The Secretary of the United States Department of Labor (the "Department") brought suit against Unite Here Local 26, alleging that the union violated § 104 of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 414, when it permitted a member of Local 26 to inspect the union's collective bargaining agreements ("agreements" or "CBAs") with employers other than the complainant's employer but refused to permit her to take notes while reviewing those agreements. The union disagrees with the Secretary's interpretation of the statute, contending that § 104 does not require a local union to allow a member or employee to inspect CBAs other than one that affects her own rights and, to the extent that the union does permit such inspection, the statute does not give a member the right to take unlimited notes on the contents of those CBAs. The parties have cross-moved for judgment on the pleadings regarding the proper statutory interpretation of § 104.

---

[1] Alexander Acosta has been appointed the Secretary of Labor for the United States Department of Labor. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acosta is automatically substituted as the plaintiff.

**I.     The Controversy**

The complaining member, Dimie Poweigha, is employed as a server by Levy Restaurants. Local 26 has negotiated CBAs with more than forty employers, including Levy Restaurants. In 2014, Poweigha requested an opportunity to review thirty-seven CBAs negotiated by the union with employers other than her own. Although the union maintained that it was not required to allow her to inspect agreements other than her own, the union eventually agreed to permit inspection. However, the union refused to permit Poweigha to take notes during the inspection.

**II.    Discussion**

Approximately twenty years after the National Labor Relations Act was passed, "Congress realized that vital non-economic interests of employees were not being adequately protected under existing legislation. The LMRDA was therefore enacted to regulate the internal affairs of labor unions and protect union members from autocratic abuses by union officials." Doty v. Sewall, 784 F.2d 1, 4 (1st Cir. 1986) (citations omitted). "In enacting the LMRDA, Congress found that 'it is essential that labor organizations . . . and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations,' and declared that the LMRDA was designed 'to eliminate or prevent improper practices on the part of labor organizations.'" McCafferty v. Local 254, Serv. Emps. Int'l Union, 186 F.3d 52, 57 (1st Cir. 1999) (quoting 29 U.S.C. §§ 401(a), (c)).

Title I of the LMRDA, 29 U.S.C. §§ 411–415, provides a "Bill of Rights" for union members. Id. (quoting Molina v. Union de Trabajadores de Muelles, 762 F.2d 166, 167 (1st Cir. 1985)). It was "specifically designed to promote the 'full and active participation by the rank and file in the affairs of the union.'" Hall v. Cole, 412 U.S. 1, 7–8 (1973) (quoting Am. Fed. of Musicians v. Wittstein, 379 U.S. 171, 182–83 (1964)). The "rights enumerated in Title I were

deemed 'vital to the independence of the membership and the effective and fair operation of the union as the representative of its membership.'" Id. at 8 (footnote omitted) (quoting Cole v. Hall, 462 F.2d 777, 780 (2d Cir. 1972)); see also Wirtz v. Hotel, Motel & Club Emps. Union, Local 6, 391 U.S. 492, 497 (1968) (describing that purpose of LMRDA was "to protect the rights of rank-and-file members to participate fully in the operation of their union through processes of democratic self-government, and, through the election process, to keep the union leadership responsive to the membership").

The present controversy arises from a provision of the so-called "Bill of Rights" concerning the right of workers under defined circumstances to be able to review CBAs entered into by a labor organization, including local unions. Section 104, entitled "Right to copies of collective bargaining agreements," provides:

> It shall be the duty of the secretary or corresponding principal officer of each labor organization, in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement, and in the case of a labor organization other than a local labor organization, to forward a copy of any such agreement to each constituent unit which has members directly affected by such agreement; and such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, *which copies shall be available for inspection by any member or by any employee whose rights are affected by such agreement*. The provisions of section 440 of this title shall be applicable in the enforcement of this section.

29 U.S.C. § 414 (emphasis added).

At particular issue is the proper construction to be given the italicized clause. The parties dispute whether the italicized clause requires a copy of any CBA the union is required to maintain for inspection at its principal office be made available to any member of the union on request, regardless of whether the requester's rights are affected by that CBA. They also dispute whether,

to the extent inspection is permitted, the "member" or "employee" may take notes during that inspection.

> When tasked with interpreting a statute,
>
> we begin our analysis with the statutory text and determine whether the same is plain and unambiguous. In so doing, we accord the statutory text "its ordinary meaning by reference to the 'specific context in which that language is used, and the broader context of the statute as a whole.'" If the statutory language is plain and unambiguous, we "must apply the statute according to its terms," except in unusual cases where, for example, doing so would bring about absurd results. "If the statute is ambiguous, we look beyond the text to the legislative history in order to determine congressional intent." "A statute is ambiguous only if it admits of more than one reasonable interpretation."

Recovery Grp., Inc. v. Comm'r, 652 F.3d 122, 125 (1st Cir. 2011) (citations omitted).

The statute involved here may be divided into four subparts:

> [1] It shall be the duty of the secretary or corresponding principal officer of each labor organization, [2] in the case of a local labor organization, to forward a copy of each collective bargaining agreement made by such labor organization with any employer to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement, [3] and in the case of a labor organization other than a local labor organization, to forward a copy of any such agreement to each constituent unit which has members directly affected by such agreement; [4] and such officer shall maintain at the principal office of the labor organization of which he is an officer copies of any such agreement made or received by such labor organization, which copies shall be available for inspection by any member or by any employee whose rights are affected by such agreement.

29 U.S.C. § 414 (numerals added).

The statute is dense, but it is not ambiguous. A careful reading discloses its scope and commands.

The use of a semicolon between the third clause and the fourth clause is a guide to understanding the provision. It suggests that Congress intended the first three clauses to be read together, and the fourth clause to be read in light of the derived understanding of the first three. The first clause simply assigns responsibility for compliance with the statute to a particular union officer. The second clause describes the duty imposed on such officer "in the case of a local labor

organization," and the third clause describes the duty imposed on such officer "in the case of a labor organization other than a local labor organization." The statute thus distinguishes between local unions and umbrella organizations such as area-wide, national, or international unions, and the duties imposed are different.

As provided in the second clause, a local union must, on request, forward a copy of any CBA ("such agreement") it has made with an employer to any employee whose rights are directly affected by that CBA, regardless of whether the requesting employee is a union member. As provided in the third clause, any labor organization that is not a local union, such as a national or international union, must send a copy of any CBA ("such agreement") to any "constituent unit," such as a local union, having members who are directly affected by it.

The second part of the statute, comprised of the fourth clause, requires "such officer" to maintain a copy of any agreement to which either the second or third clause applies and to make the copy "available for inspection by any member or by any employee whose rights are affected by such agreement." This case raises a question of how to understand the duties imposed on a local union, such as the defendant here. A local union must maintain and make available for inspection both (a) agreements it has *made* with employers (second clause) and (b) agreements an umbrella union has made that the local union has *received* from the umbrella union (third clause).

The local union, through the designated officer, is required to provide a copy of any agreement falling within category (a) "to any employee who requests such a copy and whose rights as such employee are directly affected by such agreement" pursuant to the second clause. The statute plainly distinguishes between "members" and "employees." The obligation to provide a copy of agreements within category (a) is owed to employees whose rights are directly affected by the relevant agreement. By logical extension it is not owed to a union member whose rights as an

employee are not directly affected by the agreement, such as a member who works for a different employer. In other words, a member whose rights are not directly affected by an agreement is not entitled to a *copy* of that agreement.

The scope of the inspection right mandated by the fourth clause of the statute is different. First, it should be understood that the term "such officer" at the beginning of the clause may refer either to an officer of a local union (second clause) or an officer of a labor organization that is not a local union (third clause). This is apparent because different obligations are imposed on "such officer" depending on whether he is an officer of a local union or not, and the fourth clause plainly means to extend the obligation to maintain for inspection to both local and non-local levels.

The obligation is to permit inspection "by any member or by any employee whose rights are affected by such agreement." The parties dispute whether the clause "whose rights are affected by such agreement" modifies the words "any member [and] . . . any employee" read together as one phrase, or whether the clause modifies only "any employee." The Secretary takes the latter position: the right to inspect agreements maintained by a labor organization is extended both to "any member" of the union and to "any employee whose rights are affected by it" (i.e., a non-member employee of the relevant contracting employer). In other words, the Secretary asserts that a labor organization—a designation that applies both to local unions and to intermediate or international unions—must permit its *members* to inspect all the CBAs it has made or maintains, regardless of whether a requesting member's rights are affected any such agreement. Local 26, on the other hand urges that the qualification "whose rights are affected" applies to members as well as employees of the relevant contracting employer.

The Secretary relies in large part on two district court cases, Colpo v. General Teamsters Local Union 326, 512 F. Supp. 1093 (D. Del. 1981), and Dole v. Local 427, International Union

of Electrical, Radio, and Machine Workers, 760 F. Supp. 423 (D.N.J. 1990). In both cases, the courts concluded that the local union is required to allow inspection of the union's CBAs with all employers, not just those contracted with the requesting member's employer. The courts found persuasive § 104's repetition of the phrase "by any" before both "member" and "employee." They reasoned that the restrictive clause "whose rights are affected by such agreement" is best read to modify only "employee" (which it immediately follows) and not "member," because the alternative interpretation would render the repetition of "by any" meaningless. Local 427, 760 F. Supp. at 425–26; Colpo, 512 F. Supp. at 1095.

I agree with those courts that the use of the words "by any" before both "member" and "employee" "strongly suggests that the draftsman intended to conclude the sentence with two independent clauses." Colpo, 512 F. Supp. at 1095. Otherwise, the language could have more economically been drafted as "by any member or employee whose rights are affected by the agreement." Local 427, 760 F. Supp. at 425–26. The repetition of "by any" before "employee" effectively separates "employee" from "member" and attaches it—and it alone—to the following condition ("whose rights are affected by it").

Applying these principles to the present case, under the second clause of § 104, Poweigha is entitled to a *copy* of any CBA entered into by Local 26 which directly affects her rights as an employee. As a member of Local 26, she is further entitled to *inspect* any CBA made by Local 26 or received by it from a non-local labor organization of which it is a constituent.

Now to the practical nub of the present dispute. Does Poweigha's right to inspect CBAs under the fourth clause of § 104 include the right to take notes? The statute does not address the question.

The Secretary argues, consistent with what he says has been the Department's long-standing interpretation of the statute, that a right to take notes is necessarily implied, because the right to inspect is not effective without the ability to take notes. He points to a provision in another part of the LMRDA, which requires unions to permit members "for just cause to examine any books, records, and accounts necessary to verify" the union's annual financial statements submitted to the Department. 29 U.S.C. § 431(c). The Secretary cites a Seventh Circuit case which has interpreted the term "examine" in that section to include a right to copy:

> Verification of these reports requires a detailed painstaking analysis which due to space and time constrictions can only be partially completed on the premises of the union. Without the right to copy, the members would necessarily be unable to adequately complete their analysis away from the union's premises and their right to examine the records in order to verify the [financial] reports would be nullified.

Conley v. United Steelworkers, Local Union No. 1014, 549 F.2d 1122, 1124–25 (7th Cir. 1977). The Secretary further cites Colpo, which appears to have permitted the member in that case to take notes during his inspection of CBAs. See 512 F. Supp. at 1096.

Local 26, on the other hand, argues that the right of inspection under § 104 does not include an implicit right to take notes. It suggests its own statutory analogy by pointing to § 401(c) of the LMRDA, 29 U.S.C. § 481(c), which also describes a right to "inspect." Under that section of the LMRDA, a candidate for union office is entitled "once within 30 days prior to an election . . . , to inspect a list containing the names and last known addresses of all members of the labor organization." The Secretary has interpreted the provision to mean that a candidate may look at the list, but not copy it. 29 C.F.R. § 452.71(a) ("The right of inspection does not include the right to copy the list but does include the right to compare it with a personal list of members.").

The Secretary contends that the Department's interpretation of the term "inspect" is entitled to some deference, citing United States v. Mead Corp., 533 U.S. 218, 234 (2001), and Skidmore

v. Swift & Co., 323 U.S. 134, 140 (1944). But even if its litigation position were entitled to some measure of deference or respect, the Secretary's argument in the present context is not persuasive.

First, the Seventh Circuit case, Conley, is weak support. At a first level, the statute at issue in Conley entails a right to "examine," not "inspect," 29 U.S.C. § 431(c), so the force of the analogy would depend in some degree on an answer to the lexicographical question whether, as used by Congress in different parts of the same statute, those terms are to be given the same or different meanings, and if the latter, what those meanings might be. There is no need to stare at the head of that pin. More importantly, the court in Conley was persuaded (1) by the statutory prerequisite that a requesting member show "just cause" to be able to examine (and therefore copy) the financial reports, a step that offered "protection of unions from harassment;" (2) by the complicated nature of the financial reports which requires "detailed painstaking analysis" of the "vast sums of money involving a myriad of transactions;" and (3) by the understanding that extending the right to copy would be consistent with an analogy used by a senator at the time regarding shareholder rights to examine corporate records.[2] 549 F.2d at 1124–25. Those considerations do not apply in the present context.

Additionally, as Local 26 points out, its interpretation of "inspect" is more or less consistent with the use of the term in § 401(c), the section of the statute involving access to membership lists, and the Secretary's interpretation of that provision cited above. See, e.g., Saysana v. Gillen, 590 F.3d 7, 15 n.4 (1st Cir. 2009) ("[T]he normal rule of statutory construction [is] that identical words used in different parts of the same act are intended to have the same meaning." (quoting Gustafson v. Alloyd Co., 513 U.S. 561, 570 (1995))). Previous drafts of that section would have provided

---

[2] The court also noted that a right to copy was consistent with development of case law regarding the provision. Id. at 1124–25.

union members the right to "inspect and reproduce" and "inspect and copy" membership lists. However, the bill after conference was modified to omit the right to copy the lists. See H.R. Rep. No. 86-1147, at 34 (1959) (Conf. Rep.), *reprinted in* 1 LMRDA, Legis. History of the Labor-Management Reporting and Disclosure Act of 1959, at 938 (1985) ("The substitute agreed upon in conference contains both the provisions of the Senate bill and of the House amendment, except that the provisions from the House amendment are modified to deny candidate the right to copy membership lists . . . ."). As enacted, § 401(c) provides election candidates the right "once within 30 days prior to an election . . . , to inspect a list containing the names and last known addresses of all members of the labor organization." 29 U.S.C. § 481(c). The history of the provision suggests that the drafters of the LMRDA recognized a difference between "inspect" and "copy," and, at least in the present context, the express enactment of a right to the former should not be understood to imply an unexpressed right to the latter.

Finally, and most conclusively, § 104 itself distinguishes between a right to have a copy of a CBA and a right to inspect a CBA. It establishes a relatively narrow class of persons who have a right to a copy of an agreement (an employee directly affected by the agreement) and a broader class who have a right to inspect (any member and any non-member employee affected by the agreement). To say the least, it would substantially undercut that distinction to permit an employee herself to copy out an agreement that she was not permitted to demand a copy of.

To be sure, summary note-taking, rather than complete copying, presents a less clear case. I recognize that an inability to take summary notes may reduce the usefulness of the right to inspect, but lines have to be drawn. There is no explicit warrant for note-taking in the statutory mandate to permit inspection. Moreover, with regard to another statutory right to inspect, the

Secretary's own policy judgment is that permitting inspection does not require permitting note-taking.

## III.   Conclusion

For the foregoing reasons, I conclude and rule that Poweigha, as a member of Local 26, is entitled to inspect copies of the collective bargaining agreements Local 26 made with any employer, not just Levy Restaurants. Local 26 is not required to permit her to take notes during that inspection.

The Secretary's Motion for Judgment on the Pleadings (dkt. no. 13) is DENIED and Local 26's Cross-Motion for Judgment on the Pleadings (dkt. no. 16) is GRANTED to the extent described in this opinion. Judgment shall enter in favor of the defendant.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge